## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
## CHARLESTON

**KEITH W.R. LOWE,**

      **Petitioner,**

**v.**                                    **Case No. 2:11-cv-00074**

**DAVID BALLARD, Warden,**
**Mount Olive Correctional Complex,**

      **Respondent.**

## PROPOSED FINDINGS AND RECOMMENDATION

On February 2, 2011, the petitioner filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254.  (ECF No. 2.)  This matter is assigned to the Honorable John T. Copenhaver, Jr., United States District Judge, and it is referred to the undersigned United States Magistrate Judge for submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B).

On April 27, 2011, the undersigned ordered that the respondent file an answer or other response, solely on the issue of the timeliness of the petition[1], by June 10, 2011. (ECF No. 8.)   On April 29, 2011, attorney Deirdre H. Purdy was appointed to represent the petitioner in this matter.  (ECF No. 10.)

On June 10, 2011, the respondent filed an Answer on Timeliness Issue (ECF No. 12.), a Motion to Dismiss Petition as Untimely Filed, with accompanying exhibits (ECF No. 14.), and a Memorandum of Law in support thereof (ECF No. 15.)  The respondent's motion asserts that the petitioner's section 2254 petition is untimely under 28 U.S.C. §

---

[1]  The petitioner acknowledges that his petition was not filed within the one-year statute of limitations set forth in 28 U.S.C. § 2244(d)(1); however, the petitioner argues that the statute of limitations should be equitably tolled for several reasons which will be further discussed *infra*.  (ECF No. 2 at 27-30.)

2244(d)(1), and that the petitioner is not entitled to equitable tolling of the statute of limitations.

On June 30, 2011, the petitioner, by counsel, filed a Response to Respondent's Motion to Dismiss, including exhibits.  (ECF No. 19.)  On August 2, 2011, the respondent filed a Reply to Petitioner's Response.  (ECF No. 24.)  On August 19, 2011, with leave of court (ECF No. 27), the petitioner filed a sur-reply (ECF No. 28.)  The undersigned also granted leave for the respondent to file an additional exhibit, which may be found in ECF No. 26.  The matter is now ripe for determination.

## **PROCEDURAL HISTORY**

On March 3, 2004, the petitioner was indicted by a Kanawha County Grand Jury on one count of murder in the commission of a felony.  *State v. Lowe*, Case No. 04-F-57.  (ECF No. 14, Ex. 1.)  The petitioner was represented by the Kanawha County Public Defender's Office in his Circuit Court criminal proceedings.

Following a jury trial, on April 28, 2005, the petitioner was convicted of one count of Murder in the First Degree by the commission of the felony offense of First Degree Robbery, as contained in the indictment.  (*Id.*, Ex. 2.)  The jury did not recommend that the petitioner receive mercy.  (*Id.*)  On September 19, 2005, the petitioner's motion for a new trial and motion for verdict of acquittal were denied, and the petitioner was sentenced to life in prison without the possibility of parole.  (*Id.*, Ex. 3.)

On March 28, 2006, the petitioner, by new counsel, Ira Mickenberg, filed a Petition for Appeal in the Supreme Court of Appeals of West Virginia (the "SCAWV"). (*Id.*, Ex. 4.)  The SCAWV refused the Petition for Appeal on November 28, 2006.  (*Id.*) [2]

On May 14, 2007, the Supreme Court refused the petitioner's Petition for a Writ of Certiorari.  (*Id.*, Ex. 5.)

On April 3, 2008, the petitioner filed a *pro se* Petition for a Writ of Habeas Corpus in the Circuit Court of Kanawha County.  *Lowe v. Ballard*, Case No. 08-MISC-138.  (*Id.*, Ex. 6.)   According to the docket sheet for that matter, an Amended Petition was filed on April 22, 2009.  (*Id.,* line 24.)   A Final Order denying the petitioner's amended habeas corpus petition was entered on January 25, 2010.  (*Id.*, line 41.)

On February 17, 2010, the petitioner filed a Petition for Appeal from the denial of his Circuit Court habeas corpus petition in the SCAWV.  (*Id.*, Ex. 7.)   The SCAWV refused the Petition for Appeal on June 22, 2010.  (*Id.*)  The petitioner filed the instant Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254 on February 2, 2011.  (ECF No. 2.)

## ANALYSIS

### A.  The one-year statute of limitations under section 2244(d)(1).

On April 24, 1996, a one-year limitation for filing of federal habeas corpus petitions was enacted as part of the Antiterrorism and Effective Death Penalty Act of 1996 ("the AEDPA").  The AEDPA provides, in part, that:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of –

---

[2]   As noted by the respondent, the SCAWV's final order refusing the Petition for Appeal erroneously states that the petitioner's appeal was from a judgment of the Circuit Court of Cabell County, and also contains an erroneous judgment date.  These appear to be typographical errors.

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or law of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).  Section 2244(d)(2) further provides:

> The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d)(2).

The respondent has filed a Motion to Dismiss Petitioner's section 2254 petition as being time-barred under the provisions above.  (ECF No. 14.)   The petitioner's conviction became final on May 14, 2007, when the Supreme Court denied the petitioner's Petition for a Writ of Certiorari.  Thus, under section 2244(d)(1)(A), the petitioner had until May 14, 2008, to file a section 2254 petition, unless he had properly filed an application for state post-conviction or other collateral review, which would toll the statute during the pendency of those proceedings.  28 U.S.C. § 2244(d)(2).

On April 3, 2008, the Petitioner, proceeding *pro se*, filed a habeas corpus petition in the Circuit Court of Kanawha County, which tolled the statute of limitations.  *Lowe v. Ballard*, Case No. 08-MISC-138.  Based upon the undersigned's calculation, at that time, 323 days had passed, and Petitioner had 42 days remaining under the statute of

4

limitations.  The statute of limitations is normally tolled throughout the pendency of the state court collateral proceedings, including an appeal to the SCAWV.  28 U.S.C. § 2244(d)(2).  Thus, the statute of limitations was tolled until the SCAWV refused the petitioner's habeas appeal on June 22, 2010.  The statute began to run again on June 23, 2010, and ran until it expired 42 day later, on August 3, 2010.  The petitioner's section 2254 petition was not filed until February 2, 2011, six months after the expiration of the statute of limitations.

The parties agree that the section 2254 petition was untimely under section 2244(d)(1).  However, the petitioner has argued that the statute of limitations should be equitably tolled because he was in administrative segregation for an extensive period of the statute of limitations, with no access to the law library itself, and only limited access to law library materials.  The petitioner further asserts that he is entitled to equitable tolling of the statute of limitations because he was subject to an incident of excessive force by correctional officers that left him with lingering health issues that affected his ability to timely complete his section 2254 petition.  These issues will be addressed in greater detail below.

### B.  Equitable tolling of the statute of limitations.

In *Holland v. Florida*, ____ U.S. ____, 130 S. Ct. 25499, 2554 (June 14, 2010), the Supreme Court held that equitable tolling may apply to the limitation period contained in section 2244(d)(1).   The burden of proving that equitable tolling is warranted lies with the petitioner.  *See Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005).  As noted in *Pace*, "[g]enerally a litigant seeking equitable tolling bears the burden of establishing two elements:  (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way."  *Id.*

As to when equitable tolling should be applied, the United States Court of Appeals for the Fourth Circuit has stated:

> We believe, therefore, that any resort to equity must be reserved for those rare instances where - due to circumstances external to the party's own conduct - it would be unconscionable to enforce the limitation period against the party and gross injustice would result.

*Harris v. Hutchinson*, 209 F.3d 325, 330 (4th Cir. 2000).  The Court opined that equitable tolling should apply in "two generally distinct kinds of situations:" (1) where a plaintiff/petitioner is prevented from asserting his claim by some kind of wrongful conduct on the part of the defendant/respondent; and (2) where extraordinary circumstances beyond the plaintiff/petitioner's control made it impossible to file the claims on time.  *Id.*  As noted by Respondent, the Fourth Circuit further held that "extraordinary circumstances" are those that are "beyond the petitioner's control" or "external to his own conduct."  *Hunt v.* Nuth, 57 F.3d 1327, 1340 (4th Cir. 1995).  (ECF No. 15 at 9).  Thus, equitable tolling is an extremely rare remedy.

The petitioner's section 2254 petition addressed his bases for why the limitations period should be tolled in this case.  His petition asserts that his placement in punitive segregation between August 23, 2007 and August 18, 2010, and his recurring health problems following an assault by correctional officers at the prison on October 13, 2009, contributed to his inability to timely file his section 2254 petition.  The petitioner asserts that he has suffered six grand mal seizures as a result of the assault, and that the medication he was prescribed to control the seizures caused severe side effects that affected his ability to read and focus.  (ECF No. 2 at 27.)

The petitioner further asserts that, due to his incarceration in the segregation unit, he could not visit the law library; rather, he had to request that copies of legal

6

materials be delivered to him, and he had limited to no access to a legal aide to assist

him with the preparation of his legal papers.  Specifically, the petitioner's petition states:

> After the October 13, 2009 beating, and the October 29, 2009 seizure, the Petitioner submitted a legal request form to the law library from ad-seg, lockdown, or Q.O.L. [Quality of Life] on November 1st, 2009, asking for help and information on the Anti-terrorism Act, because if the petitioner's state habeas was denied, the petitioner would not be medically able to file his Federal Habeas.  Therefore, needing assistance from a legal aid [sic; aide] before his (1) year period of limitation ran out.   On November 20, 2009 I received a response to my legal request, please see exhibit #1 which states, "It will not be necessary to assign legal aides to those inmates housed in segregated units."  "I am not a lawyer and you do not have a right to a law library legal aide."  "If you want to review the Jailhouse Lawyers Manual you will have to obtain your own copy."  Then on November 18, 2009, after waiting nearly 3 weeks for a response back from Mr. Crawford, the petitioner filed a[n] Inmate Grievance Form, No. 09-MOCC-02-730, please see exhibit #3, asking Capt. McCloud to see why Mr. Crawford would not respond to my legal request.  Subsequently, on December 7, 2009, the Petitioner submitted his 2nd legal request, please see exhibit #2.
>
> The Petitioner once again and even more specifically explains the situation and circumstances in complete detail asking for help from a legal aide and information on the ("AEDPA").  Mr. Crawford never responded to the petitioner's second legal request.

(ECF No. 2 at 27.)

The petitioner's state habeas appeal was denied on June 22, 2010.  Thus, the one-

year limitation period began to run again on June 23, 2010, with 42 days remaining

thereunder.  The petitioner's petition further asserts:

> The Petitioner yet again submitted his 3rd legal request to the law library explaining the circumstances about his seizures and medical condition.  The Petitioner explained that he needed assistance from a legal aide, and information on the one-year time limitation for filing of federal habeas, because he was medically unable to file a pro se petition on his own.  Subsequently, the petitioner never received a response back.  See, exhibit #5.
>
> On August 18, 2010, the Petitioner was released from segregation back to mainline population.  Nearly 2 months after the petitioner's state habeas was denied.  On September 3, 2010, the petitioner went to the law library.  Explaining the situation to a legal aide.  After reviewing the

> petitioner's documents the legal aide concluded that the petitioner had ran out of time by less than (1) month, and suggested that the petitioner should go ahead and file a petition under 28 U.S.C. § 2254 for a writ of habeas corpus by a person in state custody, and submit it.  In addition, explain the reasons for filing the petition after the one-year limitation period.

(*Id.* at 28.)  The petition was filed on February 2, 2011.

The petitioner maintains that he was "blatantly denied access to the law library," which, he further claims, prevented him from obtaining the necessary information about the AEDPA statute of limitations and prevented him from filing his habeas corpus petition in a timely manner.  (*Id.*)  The petitioner further asserts that the denial of access to legal materials and a legal aide, coupled with his health issues, are "extraordinary circumstances" that warrant equitable tolling of the statute of limitations, and should allow for an adjudication on the merits of his section 2254 petition.  (*Id.* at 30.)

### *The Respondent's Motion to Dismiss*

As previously stated, the respondent's Motion to Dismiss asserts that the petitioner is not entitled to equitable tolling of the statute of limitations.  The respondent's Memorandum of Law in support of the Motion to Dismiss argues:

> In this instance, however, Petitioner is claiming that because he was hospitalized and also remanded to punitive segregation for an extended period during the running of the one year limitations period, the statute should be equitably tolled.  Petitioner, however, fails to demonstrate that any limitations on his access to prison materials was a circumstance beyond his control for purposes of equitable tolling since he was segregated as the result of his own actions.

> * * *

> Petitioner also argues as grounds for equitable tolling that he was denied legal assistance by prison authorities during punitive segregation (August 23, 2007-August 18, 2010) and as a result was prevented from being able to sufficiently determine how to apply the statute to his circumstances and file in time.

* * *

Petitioner's claims for equitable tolling fail for many reasons.
Firstly, the statute began to run on May 15, 2007. Petitioner was not
segregated until August 23, 2007 – over three months later. Secondly,
Petitioner did not make any attempt to prevent the running of the statute
during the 323 days it ran before he filed his state habeas petition on April
3, 2008. Thirdly, Petitioner's ability to file a *pro se* state habeas
demonstrates sufficient access to both the court and legal materials.
Fourthly, Petitioner was committed to punitive segregation which suggests
any limitations on his ability to timely file were due to his own actions and
not because of circumstances beyond his control. Lastly, the statute was
tolled for over two years from April 8, 2007 to June 22, 2010, well before
and after the October 9, 2009 alleged altercation and during the time
Petitioner claims to have experienced several post injury seizures so
Petitioner cannot cite to medical reasons, even if true, to support a claim
of equitable tolling.

Any medical issues suffered by Petitioner well into the running of
the statute cannot act to equitably toll the statute retroactively during the
time Petitioner was dilatory in pursuing his rights[;] nor is administrative
segregation recognized grounds for equitable tolling absent extraordinary
circumstances.

(ECF No. 15 at 8-9.)

### The Petitioner's Response to the Motion to Dismiss

On June 30, 2011, the petitioner, by court-appointed counsel, filed a Response to

Respondent's Motion to Dismiss (ECF No. 19). After agreeing with the dates relevant to

the timeliness of the section 2254 petition, the petitioner offers the following additional

information concerning the factual background:

Petitioner has been incarcerated at Mount Olive Correctional
Center [sic; Complex] (MOCC ) since October 15, 2005. Beginning in May
2007, Petitioner worked *pro se* on a state habeas corpus petition. On July
5, 2007, Petitioner was placed in administrative segregation for an alleged
attempt to escape. Nevertheless, he continued to work diligently on his
state petition and had completed a draft copy by December 25, 2007, which
he submitted to the Law Library on an official Legal Request Form
for review and typing of the appendices. (Ex. A, attached.) [Footnote 1
omitted.] Being in administrative segregation, Petitioner was not able to
do this work himself. [Footnote 2 omitted.] Citing lack of adequate
facilities in the prison law library, including frequent closures of the

9

library, an inmate legal aide apologized that he was not able to do that work until April 2008, at which time the state petition for habeas corpus was filed.  (*Id.* at 2-3.)

During the pendency of the state habeas proceedings, on October 13, 2009, Petitioner was assaulted and beaten by three correctional officers.  (*See* SDWV Civil Action No. 2:09-cv-01528 & Pet. Ex. 11-13, Doc. 2-2, 13-19/20)  [Footnote 3 omitted.]  Petitioner suffered multiple injuries in the incident to his face, neck, back, elbow, skull, and knee, including a large knot behind his ear.  (Pet. Ex. 7, Doc 2-1, 21/22.)  As a result of that unprovoked assault, Petitioner began to suffer seizures during which he blacked out, urinated and defecated on himself and bit himself, lacerating his tongue.  From October 29, 2009 through May 11, 2010, Petitioner suffered six seizures of increasing severity.  (*Id.* & Pet. Ex. 6, Doc 2-1, 15-20/22.)  Between seizures he suffered frequent nosebleeds, severe headaches, dizziness, continued pain in his eyes, sensitivity to light, and difficulty focusing.  He reported that one eye twitched uncontrollably.  Petitioner made numerous requests for medical attention for these conditions, beginning on October 13, 2009, the day of the assault.  (Ex. B.)  The prison doctor initially prescribed Tylenol and Motrin, which did not control the headaches.  (Ex. C, 6.)  In December, after three seizures, which medical records characterized as "rare," phenobarbital or Dilantin were considered "if seizure recurs."  (*Id.*)

After a sixth seizure on May 11. 2010, Petitioner's seizures were apparently controlled (that is, he has not suffered another seizure to date) with Dilantin, first prescribed on May 12, 2010.  (Ex. C, 12.)  After Dilantin was first prescribed, however, Petitioner continued to complain of uncontrollable eye movements, blurred and double vision with involuntary change of focus, loss of balance with dizziness, confusion, slowed thinking, loss of appetite, nausea and headache.  (Ex. B.)  Medical records show that Petitioner attempted to lower his Dilantin dose on his own, leading to non-therapeutic levels of the drug.  He was counseled and ultimately the dose was lowered to twice a day, rather than 3 times a day.  Petitioner reports that since this change in February 2011, his side effects have subsided.

On June 22, 2010, Petitioner's appeal from the denial of his writ of habeas corpus was refused.  On that date, the AEDPA time period, which had been tolled, began to run again.  Despite the October 13, 2009 assault by correctional officers, the resulting seizure disorder, and the side effects of the anti-seizure medication Dilantin, which were unabated through March 2011, Petitioner diligently continued trying to get legal information and aid to file a federal habeas petition.  On November 18, 2009, Petitioner filed an Inmate Grievance Form, grieving the fact that Mark Crawford, MOCC Library staff, refused to provide materials from the law library (Pet. Ex. 1, 3/22).  Crawford replied that Petitioner did "not have a right to a law library aide" and advised him to "ask someone housed in

Quilliams," i.e., another inmate.   (*Id.* 1/22/)   On December 7, 2009, Petition[er] specifically requested information about "The AEDPA and the exact time limits.'" (*Id.* 2/22.)   Petitioner received no response.   On April 25, 2010, Petitioner again requested legal help or assistance to "tollup my time on the 1-year statute" and "an application for the 2254 federal habeas petition, so I can at least try to fill it out myself." (*Id.* 14/22.)   Petitioner received no response to these requests.

On August 18, 2010, Petitioner was released from administrative segregation.   He immediately went to the MOCC law library where a legal aide determined Petitioner had already missed the filing deadline by approximately two weeks.   Petitioner continued to do legal research and learned about equitable tolling.   He then worked with a different legal aide to prepare and file the instant petition.

(ECF No. 19 at 2-6.)

The petitioner's Response asserts that his situation meets both of the predicate circumstances to justify equitable tolling of the statute of limitations.   (*Id.* at 6-7.)   He contends that "he was prevented from filing by wrongful state actions of the prison librarian, who repeatedly refused to provide legal information, a legal aide, the AEDPA, or a form to file a Section 2254 petition, all in contravention of MOCC rules and regulations." (*Id.* at 7.)   Petitioner further asserts that Mr. Crawford's actions violated his right of access to the courts.   (*Id.*)   The petitioner further claims that he was:

prevented from filing by the unprovoked and wrongful assault by MOCC corrections officers that produced seizures, which were untreated by prison doctors for seven months, and were followed by serious side effects from the seizure medication.   This second situation was also created by wrongful action by state agents, the prison guards and physician, it was beyond Petitioner's control, and it rendered him medically incapable of filing his petition without legal aid, which he was wrongfully denied.

(*Id.*)

In response to the respondent's argument that the petitioner had sufficient access to legal materials to file his *pro se* state habeas petition on April 3, 2008, the petitioner asserts that a different law librarian oversaw the MOCC law library at that time, and that

legal materials and assistance were more readily available to segregated inmates before Mr. Crawford took charge.  (*Id.* at 11-12.)  Petitioner maintains that he followed the MOCC regulations to obtain legal materials and that Mr. Crawford ignored his requests in violation of the petitioner's constitutional rights.  (*Id.*)

The petitioner further asserts that he is not seeking equitable tolling due to ignorance of the law.  Rather, he asserts that he "was prevented from learning the law by prison authorities" and was denied access to the necessary materials to file his federal petition.  (*Id.* at 12-13.)

The petitioner's Response further states:

> Presumably because this situation is extraordinary, counsel has not located any published opinions concerning medical conditions caused by prison authorities' unprovoked assaults that prevented filing and supported equitable tolling.  An unpublished opinion from the Ninth Circuit is instructive, however.  Freddy Alonzo, a California state prisoner, was beaten by prison guards who destroyed his eyeglasses, rendering him unable to read or write for nearly two years.  *Alonzo v. Pliler*, 53 Fed. Appx. 854 (9th Cir. 2003).  *Alonzo* held that if Petitioner was indeed unable to read or write for almost two years because his glasses were broken when he was beaten by "adseg staff" and the prison took almost two years to replace his glasses, equitable tolling is warranted for the time Petitioner's eyeglasses were not replaced by the prison.  *Id.* at **1.  Tolling is required because "this is both an extraordinary circumstance beyond [Petitioner's] control that makes it impossible to file his claim on time and gross misconduct by the state that prevents [Petitioner] from asserting his claim."  *Id.*
>
> *Alonzo* also highlights a second point that would seem uncontroversial:  just because an inmate is in administrative segregation due to his own bad behavior, nevertheless he may not be beaten by staff into a physical or medical condition that prevents his filing a Section 2254 petition.  Respondent's repeated claim that any results of treatment in administrative segregation were due to Petitioner's own action (and therefore within his control) are unfounded and unresponsive to Petitioner's claims.  (*See* Resp.'s Mot. at 6, 8.)

(ECF No. 19 at 15-16.)  Thus, the petitioner asserts that his "medical condition combined with the prison's refusal to provide any legal materials or information together warrant

12

equitable tolling that would prevent this habeas petition from being time-barred." (*Id.* at 17.)

The petitioner further asserts that he acted diligently throughout the time allotted for filing a section 2254 petition.  His Response states:

> Petitioner requested a state habeas form in September 2007 and it was provided in early December.  By December 25, 2007, he had completed the form and sent it to the law library to be typed and copied.  This is a routine function provided by the MOCC law library.  (Pet. Ex. 1, V.B. 3.)  In early April, 2008, he received a letter from inmate legal aide Eugene Anderson stating that due to the law library being closed, a limited number of computers, with Wordperfect on them, and various other reasons, all out of Petitioner's control, Anderson was not able to review, type and copy the petition until then.  (Ex. A.)  Petitioner does not claim equitable tolling for this time, but merely notes that he was diligent and it was not due to lack of diligence on Petitioner's part that 323 days ran before the state habeas petition was filed.  Respondent's allegations in this regard is [sic; are] incorrect.  (*See* Resp.'s Mot. at 8, 13.)
>
> Respondent's claim that the 42 days remaining after June 22, 2010 should have been sufficient for Petitioner to file a pre-emptive federal form (Resp.'s Mot. at 14) ignores Petitioner's situation for those 42 days.  The prison law librarian, having denied Petitioner all access to the law library, thereafter ignored Petitioner's explicit request for a federal *habeas* form so that he might try to file [sic; fill] it out himself – despite his headaches, dizziness, blurred vision, nausea, slow thinking and confusion.  Petitioner's diligent attempt to preemptively file was deliberately blocked and prevented by the government in the guise of law librarian Crawford.

(*Id.* at 17-18.)

### The Respondent's Reply

The respondent filed a Reply brief on August 2, 2011.  (ECF No. 24.)  The Reply argues that, within days of the altercation on October 13, 2009, and throughout the petitioner's time in administrative segregation, "he filed numerous civil and administrative actions in both state and federal court and in the prison administrative system."  (*Id.* at 2.)  The Reply further asserts:

Petitioner filed a *pro se* petition for writ of habeas corpus in state court on April 3, 2008. Petitioner began filing grievances and administrative actions against prison officials almost immediately after the altercation. On December 21, 2009, Petitioner filed an action in federal court against prison officials under 28 U.S.C. § 1983 for damages. Petitioner filed several, *pro se*, hand written pleadings in that case against everyone from the prison physician to the commissioner of prisons, Jim Rubenstein.

As far as Petitioner's claims that he was denied access to prison legal materials, the prison records indicate that on November 9, 2009, Petitioner was provided with an extensive list of legal materials including several chapters of the Jailhouse Lawyer's Manual.

(*Id.*)

The respondent's Reply cites to case law from several other jurisdictions demonstrating how equitable tolling has been treated as an exceptional and rare remedy that requires a highly specific fact-based analysis. (*Id.* at 3-5.) (Citations omitted.) As noted by the respondent, in a case somewhat analogous to the petitioner's, *Ramirez v. Yates*, 571 F.3d 993, 998 (9th Cir. 2009), the Ninth Circuit declined to find that equitable tolling was warranted.

In *Ramirez*, the petitioner was involved in an altercation with another inmate and spent time in the hospital, after which he was incarcerated in administrative segregation and not allowed access to his legal materials for several months. Ramirez also claimed to have limited access to the law library and a copy machine for preparation of his federal petition. However, during that same time period, Ramirez filed motions in other courts, and offered no explanation of how he was able to file those other documents, but was unable to timely file his section 2254 petition. 571 F.3d at 998. As noted by the respondent, "[a]lthough the court remanded the case for findings on the issue of whether Ramirez was *completely* deprived of his *legal file* by prison officials[,] it nonetheless found that because Ramirez was able to file other pleadings

during the time he claims he was unable to file within the one year limitations period, he was not entitled to equitable tolling."  (ECF No. 24 at 6.)

The respondent's Reply notes that the petitioner completed medical requests and filed a litany of grievances within days of the altercation which he claims incapacitated him to the point that he could not timely file his federal habeas corpus petition.  (*Id.* at 9-10.)  As further noted by the respondent, the petitioner filed a grievance on December 19, 2009, claiming that Mr. Crawford "is clearly hindering my efforts to pursue a non-frivolous lawsuit."  (ECF No. 24, Ex. 9 at 12-16-09 Grievance.)  The respondent's Reply further states:

> Petitioner however did not file a grievance against library officials during 2010 for denial of access to library materials.  (*See Id.* at Declaration of Henry Lowry.)  Although Petitioner claimed that he was being denied legal materials, prison records show that on October 23, 2009, Petitioner was provided with several legal documents including five chapters of what is described as "J.L.M.," the jailhouse lawyers' manual.  ([ECF No. 24], Ex. 10.)  On December 21, 2009, Petitioner recovered enough to begin civil proceedings in federal court against prison officials.  ([*Id.*, Ex. 11.)

(ECF No. 24 at 10-11.)

The respondent's Reply further details the filing of the following documents by the petitioner related to his federal civil lawsuit concerning the altercation and his subsequent medical treatment, *Lowe v. Wills et al.*, Case No. 2:09-cv-01528 (S.D. W. Va.):

- April 8, 2010 - A medical grievance used in his federal civil action.  (ECF No. 24, Ex. 12.)

- May 27, 2010 – a "Notice of Retaliation and Motion for Protective Order" complaining that his girlfriend was denied visitation.  (*Id.*, Ex. 13.)

- July 2, 2010 – a "Declaration in Opposition to Motion to Dismiss from Defendant Dr. Subhash Gajendragadkar."  (*Id.*, Ex. 14.)

15

(ECF No. 24 at 11.)  Based on the filing of these documents, the respondent asserts that the petitioner was "perfectly able to file complaints, requests for medical attention and library materials, grievances and a civil suit almost immediately following his injuries, completely rebutting his claim that he was unable to timely file his federal habeas within the next ten months."  (*Id.* at 11-12.)

The respondent further asserts that the petitioner was not denied access to prison library materials.  The respondent's Reply states in pertinent part as follows:

> Proceeding on the presumption that the MOCC library generally passes constitutional muster, Petitioner must demonstrate that he was illegally denied access to prison law library materials and the court system itself.  He was not.  Respondent's exhibit 10 demonstrates that Petitioner was given extensive prison legal materials, and none of Petitioner's exhibits demonstrate that he was denied any materials that he requested.  [FN 7]   Petitioner's numerous filing in federal courts as well as his numerous administrative actions and also Petitioner's *pro se* petition for habeas corpus filed in state court, clearly demonstrate he was not denied access to the court system.
>
> [FN 7 – Petitioner's Exhibit 5 is purportedly a written request to the library for, among other things, a 2254 form petition, which request is dated in April of 2010, before Petitioner had fully exhausted his State remedies.  Petitioner claims he received no response, and this allegation is still being investigated by respondents.  However, his limitations period did not expire until August of 2010, and Petitioner makes no claim that he lacked access to a form 2254 petition throughout that period.]

(ECF No. 24 at 13.)  The respondent's Reply further addresses the petitioner's claim that he was unconstitutionally denied access to a law library aide:

> Petitioner further argues that he was entitled to a legal assistant under the MOCC Library Rules [and] Procedures, #05-07.  Petitioner claims that Mark Crawford, the librarian in the prison law library, denied Petitioner's request for a legal assistant in a memo issued October 2009.  (Petitioner's "Exhibit 1.")  This is not the case[;] rather, Mark Crawford was informing Petitioner he was not entitled to a legal assistant under the rules. [FN 8]
>
> [FN 8 – Petitioner <u>was</u> entitled to legal assistance under the rules in the form of providing him with materials from the library, but <u>not</u> in the form

of analysis and legal writing, the latter being limited to those with disabilities.  ([ECF No. 24], Ex. 15 at 2.)]

Although the rules dictate that prisoners in punitive segregation are entitled to assistance upon request, it does not create an automatic right to personal legal assistance for all segregated inmates.  Rather it merely sets forth the specific procedures for providing legal assistants for segregated inmates.  As noted in the prison library rules 7(b)(2) only the warden can authorize the admittance of inmates from the general population into restricted areas:  "The MOCC librarian will in turn assign the request to an inmate Law Library Aide,  . . .  as applicable."  Due to security reasons, unless otherwise authorized by the Warden/designees, inmates from the general population will not be permitted access to the Control Units[.]}

Nowhere in the rules does it state that segregated inmates are automatically entitled to a legal assistant for purposes of helping an inmate prepare legal content for any legal proceeding absent a showing of need under the rules.  As noted in the rules, the purpose of a legal assistant is only to help illiterate or learning disabled inmates write out their pleadings and fill out their forms.  ([ECF No. 24], Ex. 15 at 2.)  Nothing in the rules provides trained legal assistants to any inmates as a matter of right.

The note from Mark Crawford that forms the linchpin of Petitioner's argument simply informs Petitioner that he is not entitled to a legal assistant (for analysis and writing) under the rules, which was entirely correct and as such cannot form the basis for either equitable tolling or constitutional violation of Petitioner's right to access to the courts.

(ECF No. 24 at 14-15.)

## *The Petitioner's Sur-Reply*

In an authorized sur-reply filed on August 19, 2011, the petitioner points out that the Respondent's Exhibit 10, which is purported to indicate that the petitioner was provided with requested legal materials, does not contain his signature.  The petitioner further asserts that the lack of a signature indicates that he never received these materials.  (ECF No. 25 at 1.)  The petitioner further asserts that none of the documents listed on that exhibit discuss the time limits for filing under the AEDPA.  (*Id.* at 2.)

17

*The Respondent's Additional Exhibit*

In response to the petitioner's sur-reply, on September 9, 2011, the respondent filed an additional exhibit consisting of a Declaration of Mark Crawford, Law Librarian at MOCC.  (ECF No. 26.)   The Declaration indicates that there was no procedural requirement for segregated inmates to acknowledge the receipt of law library materials with their signature and, thus, the lack of the petitioner's signature on Respondent's Exhibit 10 means nothing.  Rather, Mr. Crawford's signature on the document indicates that the requested materials were submitted to the petitioner's Unit to be delivered to the petitioner.  (*Id.* at 1; ECF No. 26, Ex. 17 at 2, ¶¶ 9, 10.)   The Declaration further indicates that requests for forms, such as a section 2254 form petition were not documented, but Mr. Crawford does not believe that the petitioner was denied a section 2254 petition packet.  (*Id.* at ¶ 12.)   Exhibit 17 also contains additional Legal Request Responses indicating other legal materials that were allegedly provided to the petitioner during his period of segregation.

The petitioner was committed to punitive segregation on August 23, 2007.  The one-year statute of limitations for filing his section 2254 petition had been running since May 14, 2007.  The petitioner filed his *pro se* state habeas corpus petition on April 3, 2008.  The petitioner has provided evidence to demonstrate that the law library aide assigned to assist the petitioner with the preparation of his state habeas petition felt he was not able to complete those materials prior to that date.  At that time, 323 days had passed under the statute of limitations.

The undersigned believes the operative time period to determine whether equitable tolling of the statute of limitations is warranted is between June 22, 2010, when the petitioner's state habeas appeal was refused, and August 4, 2010, when the

18

statute of limitations expired.   On July 2, 2010, the petitioner filed a 40-page document consisting of 11 neatly hand-written pages, a certificate of service and exhibits (pages 13-39) in his *pro se* civil rights case, filed in 2009 in this federal court, concerning the altercation with correctional officers and medical treatment related thereto.   Although the petitioner was ultimately represented by counsel in that matter, he was unrepresented until August 8, 2010, after the expiration of the statute of limitations for filing his section 2254 petition.

Based upon the undersigned's experience with the petitioner and his filing in this court during the operative time period, the undersigned is not persuaded by the petitioner's argument that he was prohibited from timely filing his section 2254 petition due to his health.   Similarly unpersuasive is the petitioner's argument that he was denied access to law library materials and a section 2254 form petition.   Although it is clearly more difficult for a segregated inmate to directly access legal materials and legal assistance, the documents provided herein demonstrate that the petitioner could have timely prepared and filed his section 2254 petition.   The law requires that a petitioner raise substantially similar federal constitutional claims in both the state and federal courts.   Thus, the petitioner could have and should have filed substantially the same claims in this court as those raised in his state habeas corpus petition, and in the appeal from the denial thereof.

The petitioner's claim that he was not provided information concerning the running of the AEDPA statute of limitations is also not a basis for equitable tolling of the statute.   It is evident from the documents filed herein that the petitioner was generally aware of the existence of the one-year statute of limitations, but claimed that he did not know how it would be applied in his case.   As noted by the respondent, ignorance of the

law on how the statute of limitations is applied does not justify equitable tolling.  *See United States v. Sosa*, 364 F.3d 507, 512 (4th Cir. 2004)(*pro se* status and ignorance of the law does not justify equitable tolling); *see also, e.g., Fierro v. Cockrell*, 294 F.3d 674, 682-83 (5th Cir. 2002); *Coleman v. Johnson*, 184 F.3d 398 (5th Cir. 1999).  Thus, the petitioner cannot rely on his ignorance of the specific application of the statute of limitations to support his request for equitable tolling.

For the reasons stated herein, the undersigned proposes that the presiding District Judge **FIND** that the petitioner's section 2254 petition is untimely under 28 U.S.C. § 2244(d)(1), and that he has not demonstrated "extraordinary circumstances" sufficient to warrant any equitable tolling of the one-year statute of limitations.

## **RECOMMENDATION**

For the reasons stated herein, it is respectfully **RECOMMENDED** that the presiding District Judge **GRANT** the respondent's Motion to Dismiss Petition as Untimely Filed (ECF No. 14), **DENY**, as untimely, the petitioner's Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254, and dismiss this civil action from the court's docket.

The parties are notified that this Proposed Findings and Recommendations is hereby **FILED**, and a copy will be submitted to the Honorable John T. Copenhaver, Jr., United States District Judge.  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (service/mailing) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made,

20

and the basis of such objection.  Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the district court and a waiver of appellate review by the circuit court of appeals.  *Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Wright v. Collins*, 766 F.2d 841, 846 (4th Cir. 1985); *United States v. Schronce,* 727 F.2d 91, 94 (4th Cir. 1984).  Copies of such objections shall be served on the opposing party and Judge Copenhaver.

The Clerk is directed to file this Proposed Findings and Recommendation and to mail a copy of the same to Petitioner and counsel of record.

_____November 18, 2011_____
Date

Mary E. Stanley
United States Magistrate Judge