UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

KEITH W. R. LOWE,

      Petitioner,

v.                                    Civil Action No. 2:11-cv-00074

JONATHAN FRAME, Superintendent,
Mount Olive Correctional Complex,

      Respondent.

## MEMORANDUM OPINION AND ORDER

Pending is petitioner's Motion for Relief from a Judgment or Order, filed on June 4, 2024, (ECF No. 55), in which petitioner seeks relief under Rule 60(b)(6) of the Federal Rules of Civil Procedure from the court's January 17, 2012, Judgment Order, (ECF No. 31), denying his Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254.

## I. BACKGROUND

This action was previously referred to the Honorable Dwane L. Tinsley, United States Magistrate Judge, for submission to the court of Proposed Findings and Recommendations ("PF&R") for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). See PF&R, ECF No. 60. On January 31, 2025, the magistrate judge entered his PF&R recommending that the court deny petitioner's motion as

untimely and dismiss the action from the court's docket.[1]  <u>See</u>

PF&R at 18.

      Petitioner, who is represented by counsel, timely

filed his objections to the PF&R on February 14, 2025.  <u>See</u>

Pet's's Obj. to PF&R, ECF No. 61.  The respondent filed a

response to petitioner's objections on February 25, 2025.  <u>See</u>

Resp't's Resp. to Pet'r's Obj. to PF&R, ECF No. 62.

      The factual background as established in the PF&R is

incorporated herein, and the court includes the following which

it deems pertinent to its analysis below.

<u>Petitioner's State Court Habeas Proceedings</u>

      Petitioner was convicted of first-degree murder during

the commission of the felony offense of robbery in the Circuit

Court of Kanawha County, West Virginia, on September 19, 2005,

and he was sentenced to life in prison without the possibility

of parole.  PF&R at 1.

---

[1] The court notes that the PF&R includes a typographical error
indicating that it was filed on January 31, 2024, rather than
the date on which it was filed, January 31, 2025.  <u>See</u> PF&R at
19.  Inasmuch as the docket reflects the correct filing date,
and the petitioner made no objection to this error, and indeed
acknowledged that the PF&R was filed on January 31, 2025, this
error is of no consequence to the conclusion of this action.

On March 28, 2006, petitioner filed a Petition for
Appeal in the Supreme Court of Appeals of West Virginia, which
was refused on November 28, 2006. Id. at 1-2.  On May 14, 2007,
the United States Supreme Court refused petitioner's Petition
for a Writ of Certiorari, and petitioner's judgment became final
on that date.  Id.

On April 3, 2008, petitioner filed a petition for a
writ of habeas corpus in the Circuit Court of Kanawha County,
West Virginia.  Id. at 2; Lowe v. Ballard, No. 08-MISC-138
(Kanawha Cty. Cir. Ct.).  He amended the petition on April 22,
2009.  See Docket Sheet, ECF No. 14-6.  The state circuit court
denied petitioner's amended habeas corpus petition on January
25, 2010. See id.  He appealed to the Supreme Court of Appeals
of West Virginia on February 17, 2010, which refused the
petition for appeal on June 22, 2010.  See Pet. for Appeal from
Denial of Pet. for a Writ of Habeas Corpus, ECF No. 14-7; see
also Doc., ECF No. 14-7.

The passage of time between the denial of certiorari
on May 14, 2007, and the writ of habeas sought in state court on
April 3, 2008, left petitioner with 41 days in which to file, by
August 3, 2010, a federal petition for writ of habeas after the
state Supreme Court refusal on June 22, 2010, pursuant to the
one-year limitation set forth in 28 U.S.C. § 2244(d):

3

> A 1-year period of limitation shall apply to an
> application for a writ of habeas corpus by a person in
> custody pursuant to the judgment of a State court. The
> limitation period shall run from the latest of--
>
> > (A) the date on which the judgment became final
> > by the conclusion of direct review or the
> > expiration of the time for seeking such review;

28 U.S.C. § 2244(d)(1)(A).

Instead of filing a federal petition for a writ of habeas corpus, petitioner filed a second state circuit court habeas petition some six months later on or about December 29, 2010, which was denied years later on December 7, 2016. See Case No. 2:20-cv-00569, Lowe v. Ames, PF&R, ECF No. 8 at 3; see also Lowe v. Ballard, No. 11-MISC-625 (Kanawha Cty. Cir. Ct.). The Supreme Court of Appeals of West Virginia denied petitioner's appeal thereof on November 8, 2019. Id., Pet'r's Pet. ECF No. 1 at 7.; see Lowe v. Ames, No. 18-0001 (W. Va., Nov. 8, 2019).

### Petitioner's Federal Habeas Corpus Proceedings

A. Case No. 2:11-cv-00074

Petitioner nevertheless filed pro se his first federal petition for a writ of habeas corpus under 28 U.S.C. § 2254 in this court on February 2, 2011. ECF No. 2. Thereafter, United States Magistrate Judge Mary E. Stanley appointed Deirdre H. Purdy as counsel for petitioner. See Order granting Pet'r's

4

Mot. for Appointment of a Fed. Pub. Defender, ECF Nos. 9; 10.
After the respondent filed an answer to petitioner's pro se
complaint, (ECF No. 12), along with a motion to dismiss as
untimely, (ECF No. 14), and an accompanying memorandum in
support thereof, (ECF No. 15), Ms. Purdy filed a response to the
motion to dismiss, (ECF No. 19).  The respondent replied, (ECF
No. 24), and Ms. Purdy sought leave to file a sur-reply (ECF No.
25), which Judge Stanley granted, (ECF No. 28), and Ms. Purdy
filed it thereafter, (ECF No. 28).[2]

In his pro se petition which spanned 32 pages of
single-line spacing in small font, together with 45 pages of
exhibits, petitioner extensively alleged 1) collusion among the
trial attorneys and the judge and other errors during his state
court trial; and 2) his mistreatment in prison at Mount Olive
Correctional Complex ("MOCC") where he was allegedly beaten by
prison guards, resulting in his suffering from seizures and
requiring seizure medication that caused him serious side
effects.  See Pet'r's Pet., ECF No. 2 at 1-32.  Only two
sentences contained in his roughly 10,000-word petition plus
exhibits suggested that petitioner took issue with his trial
counsel's failure to pursue a diminished capacity defense at

---

[2] The sur-reply is of no consequence to petitioner's present
motion.

trial, wherein he stated, "the trial counsel . . . inexplicably failed to pursue the diminished capacity defense," id. at 14, and "Finally, and amazingly, the file contains the report prepared by Dr. Bobby Miller which attests to the potential diminished capacity defense of diminished capacity defense [sic] was not presented to the jury." Id. at 15.  As set forth next below, Dr. Miller in his pretrial evaluation of petitioner on October 15, 2004, did not so find; rather, he concluded that the petitioner "did not lack substantial capacity to conform his conduct to the requirements of the law[.]"  See Bobby Miller, M.D., Forensic Psychiatry Evaluation (2007), ECF No. 55-2 at 2, [hereinafter, "Dr. Miller Report"].

Petitioner purportedly refers to Dr. Bobby Miller's report of 2004, which was not included in the record, but the substance of which is separately restated when Dr. Miller produced another report in 2007 related to a separate incident of an alleged prison escape by petitioner in 2007.  See Dr. Miller Report.  In the 2007 report, Dr. Miller first referenced under "Background" his 2004 evaluation of petitioner with respect to the 2003 murder offense.  There, he reached the conclusion quoted last above and also found petitioner competent to stand trial on the 2003 offense of first degree murder.  Dr.

Miller in that same 2007 report found petitioner of diminished capacity at the time of the 2007 escape attempt.  Id. at 2.

Petitioner's trial counsel had obtained another earlier report from Dr. Joseph Wyatt to determine petitioner's mental capacity at the time of the murder offense and his competency to stand trial.[3]  See Dr. W. Joseph Wyatt, Ph.D., Forensic Psychological Evaluation (2004), ECF No. 55-1 at 28, [hereinafter, "Dr. Wyatt Report"].  Dr. Wyatt concluded in an evaluation on July 6, 2004, that petitioner was competent to stand trial but was of "diminished capacity to conform his actions to the requirements of the law" at the time of the crime in October 2003.  Id.

Petitioner acknowledged in his 2011 petition that it was untimely but argued that extraordinary circumstances existed to equitably toll the statute of limitations due to the complications he sustained from a prison beating that occurred on October 13, 2009.  Pet'r's Pet, ECF No. 2 at 30; Pet'r's Resp. to Resp't's Mot. to Dismiss Pet. as Untimely Filed, ECF No. 19 at 3.

---

[3] It is unclear whether the court ordered the reports of Drs. Wyatt and Miller before trial or if petitioner's counsel obtained the reports independently.

Ms. Purdy argued on petitioner's behalf in response to the motion to dismiss that petitioner was entitled to equitable tolling of the statute of limitations imposed under 28 U.S.C. § 2244(d), which is permitted in the court's discretion under certain circumstances.  <u>See</u> Pet'r's Resp. to Resp't's Mot. to Dismiss Pet. as Untimely Filed, ECF No. 19 at 6-7.  Ms. Purdy proposed that the petitioner's circumstances warranted equitable tolling based on the primary arguments raised by petitioner in his petition and the arguments made by the respondent in the motion to dismiss, focusing on petitioner's alleged inability to timely file due to the complications stemming from the prison beating; she did not pursue petitioner's brief mentions of his diminished competency before or at the time of trial.  <u>See</u> Pet'r's Resp. to Resp't's Mot. to Dismiss Pet. as Untimely Filed, ECF No. 19.  Ms. Purdy proposed:

> [H]e was prevented from filing by wrongful state actions of the prison librarian, who repeatedly refused to provide legal information, a legal aide, the AEDPA, or a form to file a Section 2254 petition, all in contravention of the MOCC rules and regulations. Critically, this state agent's actions also violated Petitioner's constitutional right of access to the courts. Petitioner was also prevented from filing by the unprovoked and wrongful assault by MOCC corrections officers that produced seizures, which were untreated by prison doctors for seven months, and were followed by serious side effects from the seizure medication. This second situation was also created by wrongful action by state agents, the prison guards and physician, it was beyond Petitioner's control, and it rendered him medically incapable of

filing his petition without legal aid, which he was
wrongfully denied.

Id.

Ms. Purdy noted that, despite petitioner's challenges
following the beating, "[p]etitioner diligently continued trying
to get legal information and aid to file a federal habeas
petition." Id. at 5.

Judge Stanley submitted a PF&R noting that the one-
year statute of limitations under section 2244(d)(1)(A) expired
on August 3, 2010, and recommending that the court find no valid
basis to equitably toll the statute of limitations and to
dismiss the section 2254 petition as untimely. See ECF No. 29.
Neither party objected to the PF&R; the court adopted it and
dismissed the petition by the memorandum opinion and order and
the judgment order entered January 17, 2012. ECF Nos. 30, 31.

No further action occurred in the 2011 case until the
Rule 60(b)(6) filing 12 years later on June 4, 2024,
reinitiating this matter by appointed counsel. The case is
assigned to Magistrate Judge Tinsley who succeeded Judge
Stanley.

B. Case No. 2:20-cv-00569

In 2020, petitioner filed his second pro se section 2254 petition, initiating another case in this District that has since been dismissed on June 17, 2024.  See Case No. 2:20-cv-00569, Lowe v. Ames, Pet'r's Pet., ECF Nos. 1, 45.  Therein, the petitioner mistakenly asserts that the filing of his second state court habeas petition tolled the statute of limitations for filing a federal habeas corpus petition under section 2254. Id.

Specifically, petitioner alleged in his 2020 petition and subsequent objections to the PF&R that his "well long documented history of mental illness" made him "incompetent at the time of his crime, incompetent to stand trial, during trial and during sentencing."  See id., Pet'r's Pet., ECF No. 1-3 at 2; see also Pet'r's Obj., ECF No. 11 at 2.  The court notes that the petitioner has never been found incompetent to stand trial in 2005 — not by either of the two experts who have examined him, being by the psychologist, Dr. Wyatt, in July 2004, and by the psychiatrist, Dr. Miller, in October 2004, nor by the psychologist, Dr. Hudson, who in 2024 was asked by petitioner's counsel to focus on the period of May 2007 to August 2010.[4]  See

---

[4] Dr. Hudson mistakenly concluded that Dr. Miller found that petitioner "did not lack substantial capacity to appreciate the wrongfulness of his conduct but did lack substantial capacity to conform his conduct to the requirements of the law" with regard to the 2003 murder offense.  Dr. Hudson Report at 4.  Dr.

Dr. Wyatt Report; <u>see</u> Dr. Miller Report; <u>see</u> Letter from Clifton R. Hudson, Ph.D. to Jonathan D. Byrne, Appellate Counsel (May 1, 2024), ECF No. 55-9 [hereinafter, "Dr. Hudson Letter"].

Petitioner stated that "[t]he West Virginia Supreme Court of Appeals erred in holding that trial counsel was effective . . . [due to] the failure to safeguard the petitioner's rights, including his right not to be tried, convicted or sentenced while mentally incompetent." <u>Id.</u>

He further stated that state habeas counsel was ineffective inasmuch as counsel, <u>inter alia</u>, failed to investigate Mr. Lowe's mental health history or discover evidence that he was incompetent to stand trial; failed to request a competency hearing; and failed to "present mental defense." <u>Id.</u> at 6-12.

Judge Tinsley entered a PF&R in the 2020 case on December 10, 2020, recommending that the court dismiss

---

Miller's statement to that effect in fact referred to petitioner's mental capacity at the time of his 2007 prison escape attempt for which Dr. Miller completed the 2007 evaluation and report. Regarding petitioner's capacity at the time of the 2003 murder offense, Dr. Miller concluded, "[petitioner], at the time of the offense, as a product of his psychiatric diagnoses, did not lack substantial capacity to appreciate the wrongfulness of his conduct and did not lack substantial capacity to conform his conduct to the requirements of the law." Dr. Miller Report at 2.

petitioner's petition inasmuch as the petition was untimely and the petitioner failed to allege circumstances that would permit equitable tolling of the limitation period.  Id., ECF No. 8.

Upon petitioner's objections, the court declined to adopt the PF&R, concluding that petitioner might have alleged circumstances which potentially allowed for equitable tolling of the petition, and directing further proceedings before Judge Tinsley.  Id., Order, ECF No. 18.  Judge Tinsley then granted petitioner's request for an appointment of counsel, and Jonathan Byrne of the Federal Public Defender's Office was appointed to petitioner's case.  See Case No. 2:20-cv-00569, ECF Nos. 22, 23.

Thereafter, Mr. Byrne moved for dismissal of Lowe's section 2254 petition in Case No. 2:20-cv-00569, inasmuch as Lowe did not seek permission from the Fourth Circuit to file a successive petition after filing the section 2254 motion in the 2011 case.  Id., ECF No. 44.  Therein, Mr. Byrne acknowledged that the court lacked jurisdiction over the subsequent petition and that counsel had filed on June 4, 2024, a motion for relief under Rule 60(b)(6) of the Federal Rules of Civil Procedure in the 2011 case.  Id.  Judge Tinsley entered a Voluntary Dismissal Order of the 2020 case on June 17, 2024.  Id., ECF No. 45.

Accordingly, after dismissal of the 2020 case and upon Mr. Byrne's 2024 filing in the 2011 case of the motion for

relief from judgment (ECF No. 55), along with a supporting
memorandum (ECF No. 56), Judge Tinsley filed the PF&R now
pending before the court.

## II. LEGAL STANDARD

In reviewing a PF&R, the court "may accept, reject, or
modify, in whole or in part, the findings or recommendations
made by the magistrate judge." 28 U.S.C. § 636(b)(1). Upon an
objection, the court reviews a PF&R de novo. Specifically,
"[t]he Federal Magistrates Act requires a district court to
'make a de novo determination of those portions of the
[magistrate judge's] report or specified proposed findings or
recommendations to which objection is made.'" Diamond v.
Colonial Life & Accident Ins. Co., 416 F.3d 310 (4th Cir. 2005)
(quoting 28 U.S.C. § 636(b)(1)).

## III. ANALYSIS

Judge Tinsley recommends in the PF&R that petitioner's
claim under section 2254 be denied and dismissed as untimely.
See PF&R at 14. Specifically, inasmuch as petitioner was
represented at trial and in his federal habeas, and neither he
nor habeas counsel raised the issue of petitioner's mental
health conditions other than the seizures resulting from the
prison beating as a basis of equitable tolling of the one-year

13

statute of limitations period provided for in 28 U.S.C. §
2244(d)(1), Judge Tinsley concluded that such a failure is
properly considered under Rule 60(b)(1) as a "mistake,
inadvertence . . . or excusable neglect" by a party.  Id.  In
reaching that conclusion, Judge Tinsley distinguished this case
from that of Justus v. Clarke, 78 F.4th 97, 108 (4th Cir. 2023);
wherein the petitioner proceeded pro se in his federal habeas.

     Petitioner objects to Judge Tinsley's conclusions,
asserting that Rule 60(b)(6) is applicable inasmuch as he
contends that (1) the magistrate judge erred by construing
petitioner's motion as one seeking correction of a prior ruling
under Rule 60(b)(1) which must be filed within one year that
would have expired on January 12, 2013, rather than one
presenting evidence and argument never presented before under
Rule 60(b)(6) which need only be filed within a reasonable time;
and (2) the outcome of Justus does not, as the PF&R suggests,
turn on the fact that the petitioner there was pro se, whereas
the petitioner here was represented by counsel, Ms. Purdy, in
the first habeas, but instead turns on his mental state during
the relevant time periods.  Pet'r's Obj., ECF 61 at 1-4 (citing
Justus, 78 F.4th at 111).

     The court concurs with petitioner that a Rule 60(b)(1)
mistake of law or fact is not the determinative issue; rather

the question is whether the petitioner's mental infirmity warrants equitable tolling of section 2244(d)(1) and relief under Rule 60(b)(6) as being sought within a reasonable time or, if not now clear, whether an evidentiary hearing on the mental infirmity issue is merited.

A state prisoner seeking relief under section 2254 must file his petition within one year of his case becoming final. 28 U.S.C. § 2244(d)(1). The statute is subject to equitable tolling when (1) extraordinary circumstances, (2) beyond the petitioner's control or external to his own conduct, (3) prevented him from filing on time. Rouse v. Lee, 339 F.3d 328, 246 (4th Cir. 2003). An equitable tolling determination does not involve consideration of the underlying claim or sentence, but it requires a petitioner to have "pursued his rights diligently." Green v. Johnson, 515 F.3d 290, 304 (4th Cir. 2008), see also Rouse, 339 F.3d at 251.

Rule 60(b)(6) of the Federal Rules of Civil Procedure "provides the court with a grand reservoir of equitable power to do justice in a particular case." Reid v. Angelone, 369 F.3d 363, 374 (4th Cir. 2004) (quoting Eberhardt v. Integrated Design & Constr., Inc., 167 F.3d 861, 872 (4th Cir. 1999)). Rule 60(b)(6) may permit the court to relieve a party from final judgment for "any other reason that justifies relief," in the

event another provision of Rule 60(b) is inapplicable. Fed. R. Civ. P. 60(b)(6).

"[A] court may not grant relief pursuant to Rule 60(b)(6) absent extraordinary circumstances." Reid, 369 F.3d at 374. To prevail in a Rule 60(b) motion, a party must first demonstrate "(1) timeliness, (2) a meritorious defense, (3) a lack of unfair prejudice to the opposing party, and (4) exceptional circumstances." Wells Fargo Bank, N.A. v. AMH Roman Two NC, LLC, 859 F.3d 295, 299 (4th Cir. 2017).

A. Timeliness and Extraordinary Circumstances

In Justus, the Fourth Circuit concluded that 5 years constituted a reasonable time between dismissal of the petitioner's habeas petition and his subsequent Rule 60(b) motion. Justus, 78 F.4th at 106. The Circuit Court reasoned that "extensive evidence" documenting the petitioner's severe mental disabilities rendered the five-year gap reasonable under the circumstances, meriting an evidentiary hearing to determine whether Justus's mental illness constituted an extraordinary circumstance that warrants Rule 60(b)(6) and equitable tolling relief. Id. (citing Klapprott v. United States, 335 U.S. 601, 615 (1949) (finding a four-year gap reasonable where the party was incarcerated, ill, and lacked the ability to hire counsel)).

16

Here, a significant amount of time passed between entry of the court's order and judgment adopting the PF&R on January 17, 2012, from which he now seeks relief, to the next substantive docket activity, that is, the appointment of Mr. Byrne as counsel on April 4, 2024. As previously indicated, petitioner attempted to take action in his case in 2020 by filing <u>pro se</u> the petition in Case Number 2:20-cv-00569 on August 28, 2020. <u>See</u> Case No. 2:20-cv-00569, ECF No. 1. Therein, petitioner alleged various errors relating to his state court trial, including allegations regarding his perception that he was incompetent to stand trial, though both of the doctors who examined him prior to his murder trial in 2005 found him competent to stand trial. <u>See</u> Dr. Wyatt Report (conducted on July 6, 2004); <u>see</u> Dr. Miller Report (conducted in 2007 as a result of petitioner's attempted escape, and referencing Dr. Miller's prior evaluation of petitioner on October 15, 2004.).

Inasmuch as petitioner attempted to act in his 2011 case by filing the 2020 petition, and despite the filing of the pending motion in 2024, the court considers the lapse of time in which petitioner attempted to take action in his case to be at least 8 ½ years: January 2012 to August 2020. This is plainly beyond the scope found reasonable in <u>Justus</u> and <u>Klapprott</u>, and weighs against timely filing in petitioner's circumstances.

Nevertheless, the court proceeds to analyze petitioner's circumstances in light of <u>Justus</u>.

The "extensive evidence" that the Fourth Circuit concluded justified the 5-year lapse in <u>Justus</u> included the following circumstances regarding the petitioner's mental health: 1) he was twice found incompetent to stand trial; 2) considering the petitioner's extensive medical records documenting his mental health challenges, the sentencing court recognized substantial evidence existed that the petitioner suffered from very serious mental health problems; 3) he was diagnosed with Schizoaffective Disorder, which diagnosis was later changed to Bipolar Disorder; 4) his treating psychologist's testimony at trial and his post-conviction medical records established the petitioner's deterioration when off his medications; and 5) two affidavits from the petitioner's family members written 10 to 12 years after the crime for which the petitioner was convicted, which described the petitioner's unstable mental condition at the time of the crime. <u>Id.</u>, 78 F.4th at 102, 115.

1. <u>Evidence of petitioner's mental condition from years 2009-2020 demonstrates untimeliness of petitioner's petition.</u>

At the outset, the court notes that its analysis does not serve to suggest that petitioner did not or does not suffer

from serious mental disorders, including paranoid schizophrenia,
post-traumatic stress disorder, and borderline personality
disorder.  Indeed, Dr. Joseph Wyatt concluded as much during
plaintiff's psychological evaluation on July 6, 2004, noting
that petitioner's medical records indicate that he was
voluntarily admitted to Three Rivers Hospital in Louisa,
Kentucky from December 28, 2002, to January 2, 2003, during
which time he was prescribed Seroquel and Paxil, anti-psychotic
and anti-depressive medications, respectively.  See Dr. Wyatt
Report, ECF No. 55-1 at 20-21.  Dr. Miller, a psychiatrist, drew
the same conclusions in an evaluation of petitioner conducted on
April 20, 2007.  These diagnoses notwithstanding, the court's
analysis focuses on whether the severity of petitioner's
disorder varied and thus established periods of stability during
which petitioner could have filed his motion, thereby rendering
his petition untimely.

        Here, petitioner was found competent to stand trial
despite his paranoid schizophrenia diagnosis.  See Dr. Wyatt
Report, ECF No. 55-1 at 28, ("[Petitioner] is presently
competent to stand trial."); see Dr. Miller Report, ECF No. 55-2
at 1, (Petitioner, at the time of the murder offense, "as a
product of his psychiatric diagnoses, did not lack substantial
capacity to appreciate the wrongfulness of his conduct and did

not lack substantial capacity to conform his conduct to the requirements of the law."). These conclusions also contradict petitioner's attempt to challenge his state court conviction in Case Number 2:20-cv-00569 on the basis that the trial court violated his right not to be tried while incompetent. <u>See</u>, <u>e.g.</u>, Case No. 2:20-cv-00569, ECF No. 1 at 8 (Petitioner suggests, "the West Virginia Supreme Court of Appeals erred in holding that the trial judge . . . did not violate the petitioner's right not to be tried while incompetent . . . .").

Contemporaneous medical records establishing petitioner's mental health diagnoses are lacking aside from references of medical records reviewed by Drs. Wyatt and Miller in their reports. <u>See</u> <u>id.</u> at 2 (listing as "sources of information" his review of petitioner's medical records including (1) medical records from Orange County Corrections Health Services dated 2002, and (2) psychiatric medical records from Three Rivers Medical Center dated December 2002); <u>see</u> Dr. Miller Report at 20-21 (describing petitioner's medical history and previous treatment). Petitioner's counsel, in 2024, also obtained a licensed psychologist, Clifton R. Hudson, Ph.D., to review the records, which he did in the course of his directions to focus on the May 14, 2007, to August 3, 2010 period. <u>See</u> Dr. Hudson Letter.

Indeed, of the three reports, Dr. Wyatt's report of July 6, 2004, offers contemporaneous conclusions regarding petitioner's mental condition before trial and his diminished capacity at the time of the crime. <u>See</u> Dr. Wyatt Report. Dr. Miller's report of October 15, 2004, relied in part on Dr. Wyatt's 2004 tests and conclusions regarding petitioner's schizophrenia diagnosis. <u>See</u> Dr. Miller Report. Similarly, Dr. Hudson's report, obtained by petitioner's counsel in 2024, was retrospective, with Dr. Hudson focusing his review of petitioner's mental state primarily to the years 2007-2010, as requested, and relying on the reports of Drs. Wyatt and Miller. Dr. Hudson did not interview petitioner. All three doctors indicate that they reviewed petitioner's prior medical records, which purportedly supported petitioner's diagnosis of schizophrenia, though the medical records were not provided to the court.

The references and diagnoses contained in the medical reports of Drs. Wyatt and Miller, and reviewed by Dr. Hudson, establish petitioner's extensive history of mental health challenges including diagnoses for paranoid schizophrenia, post-traumatic stress disorder, and borderline personality disorder, for which petitioner has been prescribed psychotropic and antipsychotic medications. <u>See</u> Dr. Miller Report at 2-4. Dr. Wyatt's report indicates that petitioner was hospitalized from

December 28, 2002, until January 2, 2003, during which time he
was "described as paranoid, hearing voices telling him he was
ugly and that people hate him and that he should hurt people.
The physician also noted that [petitioner] had a history of '. .
. physical, sexual, emotional and mental abuse . . .' at the
hands of his father."  Dr. Wyatt Report at 21.

       The court finds the reports of Drs. Wyatt, Miller, and
Hudson to be reliable, and it relies on references and diagnoses
described therein to establish that petitioner suffered from the
described mental health challenges, including paranoid
schizophrenia, during the times described in the reports.  <u>See</u>
Dr. Wyatt Report; <u>see</u> Dr. Miller Report; <u>see</u> Dr. Hudson Letter.

       Given the time frame limitations on the doctors'
opinions, the reports do little to explain whether petitioner
experienced periods of competency in the many years preceding
his filing of the pending motion for relief.

       As previously concluded by Judge Stanley and adopted
by this court in 2011, the statute of limitations for petitioner
to file a section 2254 petition expired on August 3, 2010, and
petitioner filed his section 2254 petition on February 2, 2011,
six months after the limitations period expired.  PF&R, ECF No.
29 at 5.

Petitioner argued that the limitations period should have been tolled inasmuch as he was in administrative segregation for an extensive period of the statute of limitations, with no access to the law library itself, and only limited access to law library materials; he was subject to an incident of excessive force by correctional officers that left him with lingering health issues that affected his ability to timely complete his section 2254 petition; and his trial counsel erred by failing to pursue a diminished capacity defense in light of Dr. Wyatt's conclusion that petitioner had a diminished capacity at the time of the trial. See Pet'r's Pet., ECF No. 2.

Though Judge Stanley did not directly address the issue of diminished capacity in her PF&R, for the same reasons petitioner's other grounds for relief were denied, petitioner's argument about diminished capacity is similarly untimely. Petitioner did not pursue his rights diligently, and extraordinary circumstances did not exist to warrant equitable tolling of the limitations period.

Judge Stanley explained that, "[b]ased on the undersigned's experience with the petitioner and his filing in this court during the operative time period, the undersigned is not persuaded by the petitioner's argument that he was

prohibited from timely filing his section 2254 petition due to his health."  PF&R, ECF No. 29 at 19.

The court is similarly unpersuaded by petitioner's argument that his mental health precluded him from timely filing and that he is entitled to extraordinary relief under Rule 60(b).

The court concludes that, based on petitioner's filings in this District from the years 2009-2025, he demonstrated prolonged periods of competency during which he was capable of timely filing his original habeas petition, and moreover, of timely filing his Rule 60(b) motion.  Instead, he waited until well after the statute of limitations expired on August 3, 2010, before filing his 2011 federal habeas petition, and then failed to seek extraordinary relief under Rule 60(b) until 2024.

The time periods during which evidence exists for the court to consider petitioner's mental capacity can be broken into the following periods: years 2009-2012, years 2013-2020, and years 2020-2024.

a.  <u>2009-2012</u>

Petitioner demonstrated his mental acuity and ability to timely file, long before the limitations period expired on

24

August 3, 2010, through his behavior in filing Case Number 2:09-cv-1528, <u>Lowe v. Wills et al</u>.  In that case, filed on December 21, 2009, petitioner filed a <u>pro se</u> complaint alleging assault by correctional officers.  ECF No. 1.  He filed various <u>pro se</u> motions in February, April, and May of 2010, (<u>see</u> ECF Nos. 11; 18; 42), on which he prevailed (<u>see</u> ECF Nos. 14; 19; 47), in addition to filing an amended complaint on April 8, 2010, (ECF No. 17), before he obtained counsel in August 2010, (ECF No. 55).

Importantly, petitioner filed multiple <u>pro se</u> motions and other documents in <u>Wills</u> over the days leading up to August 3, 2010, when the limitations period expired for him to file a section 2254 petition relevant to his pending motion. Petitioner's suggestion that he was incapable of timely filing his 2011 petition or that he has established extraordinary circumstances to warrant equitable tolling is plainly contradicted by his coherent and successful <u>pro se</u> filings in <u>Wills</u> throughout the same relevant time period.

Further evidencing petitioner's ability to timely file, petitioner filed his section 2254 petition on February 2, 2011, while he continued to litigate <u>Wills</u>, and he ultimately prevailed in settlement of <u>Wills</u>, (ECF No. 161), and the case was dismissed on June 30, 2011, (ECF No. 166).

b.    <u>2013-2020</u>

Moreover, the parties agree that petitioner began a proper medication regimen in 2013, at which time, according to Dr. Hudson, "[a]n individual suffering from paranoid schizophrenia who had previously displayed related deficits in adjudicative competency would not be expected to achieve and reliably maintain competency until stabilized on antipsychotic medication." Dr. Hudson Letter at 6. Petitioner agrees that he "only began to receive appropriate treatment for his conditions in 2013, more than a year after this [c]ourt dismissed [petitioner's] § 2254 petition as untimely filed." Pet'r's Mem. Supp., ECF No. 56 at 19. Petitioner does not provide evidence of his mental health to explain the lapse of time from 2013 to 2020, when he eventually filed <u>pro se</u> his second section 2254 petition, which precipitated his pending 2024 Rule 60(b) motion in this, his 2011 case. <u>See</u> Case No. 2:20-cv-00569, ECF No. 1.

The only evidence in the record of petitioner's mental condition after 2013, noted by Dr. Hudson in his report, is that petitioner reported suicidal thoughts on May 23, 2016, "but stated that he won't act on them." <u>See</u> Dr. Hudson Letter at 4.

The Fourth Circuit concluded in <u>Justus</u> that the petitioner's failure to provide treatment records or other evidence of his level of impairment during the relevant one-year

federal habeas filing period in that case did not render his petition untimely given the "extensive evidence documenting Justus's severe mental disabilities." Justus 78 F.4th at 115. The Court of Appeals reasoned that, inasmuch as the petitioner "had at that point[] been diagnosed with Schizoaffective Disorder or Bipolar Disorder . . ., which is a lifelong illness[,]" the petitioner's "earlier and later medical records provide evidence of his mental functioning during the relevant period." Justus 78 F.4th at 115 (emphasis in original).

In contrast, here, the record is devoid of medical records in the relevant period of 2013-2020. Without evidence from petitioner regarding his mental condition during that time, the court looks to other evidence of petitioner's mental capacity. Petitioner, through copious timely, intelligible, and prolific case filings, has provided substantial evidence of his competence and penchant for timely filing during the years preceding his 2020 petition. Petitioner has abundantly demonstrated his "ability 'rationally or factually to personally understand the need to timely file.'" Justus 78 F.4th at 116 (citing Bills v. Clark, 628 F.3d 1092, 1100 (9th Cir. 2010)).

Specifically, in addition to the other cases discussed herein, petitioner filed and litigated the following five cases in this District between the years 2013 and 2020, often

representing himself pro se, and frequently prevailing in self-represented motions and, in one instance, obtaining remand from the Fourth Circuit in a pro se appeal.

> (1)   Case Number 2:13-cv-22416, Lowe v. Matheney et al

Plaintiff initiated this case on August 29, 2013, by filing a pro se class action complaint seeking injunctive and declaratory relief.  ECF No. 2.  He then filed on September 6, 2013, a pro se amended complaint seeking to proceed individually and alleging excessive force against mentally ill inmates.  ECF No. 6.  He filed multiple pro se motions, including two motions to amend the amended complaints, on December 10, 2013 and September 11, 2014, respectively, (ECF Nos. 11; 29), which were granted on December 20, 2013 and September 30, 2014, respectively (ECF Nos. 13; 34).  Petitioner prevailed, in part, at the dispositive motions stage when, on September 30, 2015, the court granted in part and denied in part the defendants' motion to dismiss.  ECF Nos. 116, 117.  Thereafter, petitioner obtained counsel on December 15, 2015.  ECF No. 119.  Petitioner ultimately prevailed by settling his claims, and the case was dismissed thereafter on July 25, 2016.  ECF No. 151.

> (2)   Case Number 2:13-cv-33004, Lowe v. May et al

Petitioner filed a pro se complaint in this case on December 23, 2013, (ECF No. 2), and a pro se amended complaint on February 18, 2014, (ECF No. 4), alleging deliberate indifference by prison officials. See id. Petitioner filed a pro se motion for appointment of counsel on March 5, 2014, (ECF No. 5), and a pro se motion for a status conference or hearing on March 31, 2014, (ECF No. 9), before filing a motion to dismiss without prejudice on September 9, 2014, (ECF No. 10), which the court granted on September 15, 2014 (ECF No. 11). Petitioner intelligibly explained his reasons for seeking dismissal. See ECF No. 10.

> (3)   Case Number 2:17-cv-02345, Lowe v.
>        Wexford Health Sources, Inc. et al.

In this case, petitioner filed on April 13, 2017, a pro se complaint, (ECF No. 1), and on December 5, 2017, a pro se amended complaint, (ECF No. 19), each alleging deliberate indifference. See id. Petitioner filed regular and prolific motions, letters, and memoranda throughout the years 2017 - 2021, until the district court entered a memorandum opinion and order and accompanying judgment order granting summary judgment to the defendants on September 20, 2021. ECF Nos. 141, 142.

Petitioner, still proceeding pro se, appealed to the Fourth Circuit on October 7, 2021, (ECF No. 144), and prevailed

by obtaining remand regarding one defendant on November 1, 2023,
(ECF No. 153).

Petitioner then obtained counsel on May 6, 2024, (ECF
No. 163), prevailed in settlement, (ECF No. 173), and the case
was later dismissed by order entered on October 3, 2024, (ECF
No. 180).

(4)   Case Number 2:17-cv-03929, <u>Lowe v.
            Williams</u>

Petitioner alleged excessive force in his <u>pro se</u>
complaint in this action filed on September 6, 2017, (ECF No.
1), followed by a <u>pro se</u> amended complaint on November 14, 2018,
(ECF No. 34).   Petitioner survived the dispositive motions
stage, prevailing, in part, over motions for summary judgment
filed by the defendants, memorialized by memorandum opinion and
order entered September 9, 2020.   ECF No. 136.   Petitioner again
prevailed when the court denied the defendant's renewed motion
for summary judgment on November 2, 2021.   ECF No. 185.
Petitioner filed multiple motions and then prepared for trial
by, <u>inter alia</u>, requesting a copy of the Local Rules and exhibit
stickers.   <u>See</u>, <u>e.g.</u>, ECF No. 208.   The case proceeded to a 2-
day jury trial from August 30, 2022 to August 31, 2022, where
the petitioner, still representing himself <u>pro se</u>, lost.   ECF
No. 252.   Petitioner filed <u>pro se</u> motions for judgment as a

matter of law and for a new trial on September 15, 2022, (ECF No. 253), which were denied on October 7, 2022.  ECF No. 255.

> (5)  Case Number 2:19-cv-00504, <u>Lowe v.
> Ballard et al</u>

Petitioner filed this excessive force action with a <u>pro se</u> complaint, filed July 9, 2019, a <u>pro se</u> amended complaint, filed September 17, 2020, and a <u>pro se</u> second amended complaint, filed April 30, 2021.  ECF Nos. 1; 12; 20. Petitioner filed regular and prolific motions, letters, and the like over the years 2019 to 2023, prevailing in at least one objection and motion filed June 13, 2023, (ECF No. 73), by an order granting the objection and motion on July 12, 2023.  ECF No. 75.

After the magistrate judge submitted a PF&R to the district judge, (ECF No. 78), the court entered an order on January 30, 2024, dismissing one defendant for lack of service, and the other two defendants prevailed on motions to dismiss for failure to state a claim, (ECF No. 83).

> c.  <u>2020-2024</u>

Petitioner filed still more cases and further motions, letters, and other documents after 2020, showing continuity of petitioner's proclivity for timely filing in this District.  As

31

in the cases described above, petitioner demonstrated, as set
forth below, his devotion to timely filing and litigating his
claims and his ability to file intelligible and exhaustive
documents, often prevailing on motions or by settling the cases,
thus detracting from his argument that he was mentally incapable
of timely filing or that he has established extraordinary
circumstances to warrant equitable tolling.

>    (1)    Case Number 2:21-cv-00175 <u>Lowe v.</u>
>           <u>Jividen et al</u>.

    After filing a <u>pro se</u> complaint on March 19, 2021,
(ECF No. 1), petitioner sought and obtained dismissal of the
case, citing his poor mental health as a result of extended
solitary confinement.  <u>See</u> ECF Nos. 9, 10.  In his motion to
dismiss, filed on May 20, 2021, petitioner made no mention of
his mental health history or suggestion that his deteriorating
mental health stemmed from any source other than solitary
confinement.  <u>See</u> ECF No. 9.

>    (2)    Case Number 2:21-cv-00283 <u>Lowe v.</u>
>           <u>Jividen et al</u>.

    This case was removed by the defendants on May 6,
2021, based on federal question jurisdiction.  ECF No. 1.  The
petitioner, proceeding <u>pro se</u>, responded in opposition to the

removal on May 13, 2021, (ECF No. 4), and sought leave to file
an amended complaint also on May 13, 2021, (ECF No. 5).  On May
20, 2021, petitioner filed a motion to dismiss without prejudice
citing his poor mental health as a result of extended solitary
confinement, (ECF No. 9), which the court granted (ECF No. 11).
Petitioner subsequently wrote an intelligible letter on July 12,
2021, to the clerk of court seeking an update on his motion to
dismiss inasmuch as he had not received a copy of the order
dismissing the case.  See ECF No. 12.  The Clerk responded to
the petitioner's letter and provided to petitioner a copy of the
docket sheet and order of dismissal which had been entered in
the case on June 10, 2021.  ECF Nos. 11; 13.

> (3)  Case Number 2:22-cv-00434 Lowe v. Ames
> et al.

Plaintiff initiated this action by filing a pro se
complaint on October 5, 2022.  ECF No. 1.  Plaintiff filed a
motion for appointment of counsel on June 12, 2023.  ECF No. 11.
The defendants filed a motion to dismiss the complaint, (ECF No.
15), along with a supporting memorandum, (ECF No. 16), on July
20, 2023.  On August 10, 2023, plaintiff filed a pro se motion
for leave to supplement his complaint with various exhibits,
(ECF No. 21), and a response in opposition to defendants' motion
to dismiss, (ECF No. 22).  Defendants filed a reply on August

22, 2023.  ECF No. 23.  Judge Tinsley granted plaintiff's motion

for leave to supplement his complaint, (ECF No. 26), and

plaintiff's <u>pro se</u> first amended complaint was filed on December

7, 2023, (ECF No. 27).  Petitioner alleged, <u>inter alia</u>,

deliberate indifference of the defendant prison and correctional

officers.  <u>Id.</u>

After the defendants in the case filed a motion to

dismiss, Judge Tinsley entered a PF&R recommending that the

court deny without prejudice the defendant's motion to dismiss,

(ECF No. 28), and the court entered a memorandum opinion and

order denying the defendants' motion, (ECF No. 31).

Thereafter, petitioner obtained counsel, (ECF No. 32),

who filed an amended complaint on petitioner's behalf on

February 21, 2024, and counsel therein inadvertently omitted a

critical date which was originally alleged by petitioner in an

affidavit attached by petitioner to his <u>pro se</u> complaint, (ECF

No. 39).

The defendants prevailed on a motion to dismiss on

statute of limitations grounds inasmuch as the amended complaint

filed by petitioner's appointed counsel omitted the operative

date originally alleged by petitioner.  ECF No. 40.  Thereafter,

on November 5, 2024, the petitioner, by counsel, prevailed in a

motion to alter or amend judgment, thereby adding in a third

amended complaint the omitted date and overcoming the obstacle of the statute of limitations.  ECF No. 64.

> 2. **Petitioner has not established extraordinary circumstances to warrant relief under Rule 60(b)(6).**

While there is no explicit time limitation provided for Rule 60(b)(6), "[a] motion under Rule 60(b)(6) must be made within a reasonable time."  Fed. R. Civ. P. 60(b)(6)(1).  "For equitable tolling to occur, a petitioner must also have 'pursued his rights diligently.'"  PF&R at 9-10 (citing Green v. Johnson, 515 F.3d 290, 304 (4th Cir. 2008) (additional citation omitted)).

Petitioner has abundantly demonstrated his ability to timely file and effectively represent himself, and as a result, the court concludes that petitioner has maintained periods of competency and lucidity from 2012-2020 during which he could have filed the pending Rule 60(b)(6) motion following the dismissal of his first federal habeas petition on January 17, 2012, as untimely.  Petitioner has demonstrated his mental acuity inasmuch as he adhered to filing deadlines, competently argued on his own behalf, prevailed in many motions and in settlement, and even obtained remand from the Fourth Circuit in one instance while proceeding pro se.  Petitioner's ability to

navigate the judicial system in at least nine other cases over the course of the 2009-2023 period amplifies petitioner's ability throughout much of that period to rationally and factually understand the need to timely file and effectively do so.

Accordingly, the court concludes that petitioner's circumstances fail to rise to the level of extraordinary circumstances contemplated in Justus, and petitioner has failed to justify equitable tolling of the limitations period or to justify his decades-long delay in filing a Rule 60(b) motion.

### B.   Meritorious Defense

In the context of a habeas case, the Fourth Circuit has held that, regarding the meritorious defense factor of a Rule 60(b) motion in a habeas case, "a petitioner must show that 'vacating the judgment will not be an empty exercise.'" Justus, 78 F.4th 105 n.6 (quoting Teamsters, Chauffeurs, Warehousemen & Helpers Union, Loc. No. 59 v. Superline Transp. Co., 953 F.2d 17, 20 (1st Cir. 1992)). The Court of Appeals has explained that "[t]he underlying concern" of this prong is "whether there is some possibility that the outcome . . . after a full trial will be contrary to the result achieved by the default." Id.

(quoting <u>Augusta Fiberglass Coatings, Inc. v. Fodor Contracting Corp.</u>, 843 F.2d 808, 812 (4th Cir. 1988) (additional citation omitted)).

        Though petitioner, by counsel, does not address the meritorious defense factor in his motion or memorandum in support thereof, petitioner asserts in his reply that he has met his burden of showing a meritorious defense inasmuch as petitioner has a strong argument for equitable tolling during the time period of 2007-2010.  Pet'r's Reply, ECF No. 59 at 9-10 (citing <u>McLawhorn v. John W. Daniel & Co.</u>, 924 F.2d 535, 538 (4th Cir. 1991) ("[T]he movant assumes the burden of showing a meritorious defense against the claim on which judgment was entered as a threshold condition to any relief whatsoever under the Rule.") (additional citation omitted)).

        Though petitioner need not present "an ironclad claim or defense which will guarantee success at trial, [he] must at least establish that [he] possesses a potentially meritorious claim or defense which, if proven, will bring success in its wake . . . . [I]f the allegation is purely conclusory, [it] will not suffice to satisfy the precondition of Rule 60(b) relief." <u>Teamsters, Chauffeurs, Warehousemen & Helpers Union, Loc. No. 59 v. Superline Transp. Co.</u>, 953 F.2d 17, 21 (1st Cir. 1992) (citing <u>Augusta Fiberglass Coatings, Inc.</u>, 843 F.2d at 812).

The defense presented by the plaintiff is his mental infirmity at the time of the murder trial in 2005, but, as previously detailed, petitioner was deemed competent to stand trial by both Dr. Wyatt and Dr. Miller.[5] Dr. Wyatt, the psychologist, nevertheless found diminished capacity, whereas Dr. Miller, the psychiatrist, did not.

Given the conclusions of Drs. Wyatt and Miller, whose reports were obtained by petitioner's trial counsel, it follows that trial counsel reasonably chose not to undertake to present a diminished capacity defense at the 2005 jury trial, an issue on which the petitioner's two experts disagreed, but both of whom found him competent to stand trial.  The same conclusion was apparently reached by petitioner's federal habeas counsel, Ms. Purdy, who similarly opted not to pursue a diminished capacity argument on petitioner's behalf.

Petitioner has failed to show a meritorious defense regarding his mental capacity at the time of the 2003 murder offense, of which he was convicted by a jury.

---

[5] The only other evidence in the record of petitioner's competency at the time of trial aside from the reports of Drs. Wyatt and Miller is Dr. Hudson's incorrect statement, made retrospectively in 2024, that Dr. Miller found petitioner to be incompetent to stand trial.

C.    Unfair Prejudice

"The court should in every case give some, though not controlling, consideration to the question whether the party in whose favor judgment has been entered will be unfairly prejudiced by the vacation of his judgment." Compton v. Alton Steamship Co., 608 F.2d 96, 102 (4th Cir. 1979).

The court agrees with the respondent to the extent that "conducting a hearing in this matter would [likely] not result in [p]etitioner having the one-year limitation period equitably tolled such that his Section 2254 petition would be deemed timely filed," and that respondent would be "highly prejudiced by the significant gap in time from [p]etitioner's conviction [more than] nineteen years ago until now, in the event an evidentiary hearing is necessary." Rep't's Resp., ECF No. 58 at 8.

Petitioner disposes of the respondent's unfair prejudice argument, deeming an evidentiary hearing as merely "inconvenient" to the state. Pet'r's Reply, ECF No. 59 at 9. A practical view of the circumstances shows that an evidentiary hearing more than 20 years after petitioner's conviction is far more than a matter of inconvenience; the likelihood that the respondent could conduct an evidentiary hearing at this juncture is unrealistic. Respondent's ability, twenty-two years after

the offense, to locate witnesses and for those witnesses to
testify reliably after so many years is likely to amount to the
sort of "empty exercise" contemplated in <u>Superline Transp. Co.</u>,
953 F.2d at 20.  Respondent would doubtlessly face great
hardship in preparing for a trial so long after petitioner's
conviction.  <u>Nat'l Credit Union Admin. Bd. v. Gray</u>, 1 F.3d 262,
265 (4th Cir. 1993)).


### D.    <u>Petitioner has not demonstrated a basis for equitable tolling.</u>

As explained above, petitioner filed two petitions for
writs of habeas corpus in state court, one on April 3, 2008, and
one on December 28, 2010.  <u>See</u> <u>Lowe v. Ballard</u>, No. 08-MISC-138
(Kanawha Cty. Cir. Ct.); <u>Lowe v. Ballard</u>, No. 11-MISC-625
(Kanawha Cty. Cir. Ct.).  Petitioner appealed the state circuit
court's denial of his second state habeas petition, and the
appeal was denied by the Supreme Court of Appeals of West
Virginia on November 8, 2019.  <u>Lowe v. Ames</u>, No. 18-0001 (W.
Va., Nov. 8, 2019).

Petitioner filed his first petition for a writ of
habeas corpus under 28 U.S.C. § 2254 in this court on February
2, 2011.  <u>See</u> Pet'r's Pet., ECF No. 2.  As described, the court

adopted the PF&R of Judge Stanley, wherein it was determined that the one-year statute of limitations under section 2244(d)(1)(A) expired on August 3, 2010, and that there was no basis for equitable tolling thereof.

Thereafter, more than 10 years after the expiration of the one-year statute of limitations, petitioner filed the petition in the 2020 case, asserting his understanding of his need to timely file and his belief that his petition was in fact timely. <u>See</u> Case No. 2:20-cv-00569, Pet'r's Pet. ECF No. 1-3, at 7. Petitioner explained his understanding under the section of his petition entitled "Statute of Limitations" that his

> pro se petition is subject to a one year statute of limitation as provided by 28 U.S.C. § 2244(d)(1). Pursuant to 28 U.S.C. § 2244(d)(2), this limitation period is tolled while the petitioner pursues his state post-conviction remedies.
>
> ***
>
> On November 8, 2019, the West Virginia Supreme Court of Appeals filed its "Memorandum Decision" opinion denying the petitioner's appeal from the decision of the Circuit Court of Kanawha County, which in turn had denied his state application for writ of habeas corpus. This denial became final by mandate on November 8, 2019, concluding the petitioner's pursuit of state post-conviction remedies. The petitioner now applies for a writ of habeas corpus in federal court. Accordingly, the petitioner's *pro se* petition for writ of habeas is timely filed pursuant to 28 U.S.C. 2244(d).

<u>Id.</u>

Petitioner did not argue that his mental health history prevented him from timely filing his petition; in fact, he believed that his petition was timely given his filing within one year of the state court's denial of his state court habeas petition.  Petitioner's claimed mistake of law — that petitioner's state court proceedings equitably tolled the proceedings in the 2011 federal case and permitted him to file a subsequent section 2254 petition — is not a valid basis for equitable tolling.  <u>Marsh v. Soares</u>, 223 F.3d 1217, 1220 (10th Cir. 2000) (stating that ignorance of the law is insufficient to warrant equitable tolling); <u>Miller v. Marr</u>, 141 F.3d 976, 978 (10th Cir. 1998) (equitable tolling not justified by the fact that the prisoner did not know about time limitation of Act of Congress).

Judge Tinsley aptly noted in the PF&R in Case Number 2:20-cv-00569 that,

> [petitioner] filed the instant petition [in the 2020 case] . . . on August 28, 2020, more than ten years after the expiration of the statute of limitations under § 2244(d)(1)(A), and he has not demonstrated any basis for equitable tolling thereof, or the application of any of the other provisions for running of the statute of limitations under § 2244(d)(1).

Case No. 2:20-cv-00569, PF&R, ECF No. 8 at 4.

Petitioner asserted, in the 2020 petition, claims that are largely grounded in claims of ineffective assistance of

42

habeas counsel, which are not cognizable as independent claims for federal habeas corpus relief.  See Coleman v. Thompson, 501 U.S. 722 (1991); 28 U.S.C. § 2254(i).  The remaining claims, including his claims regarding his mental health history, were available and apparent during his initial state habeas corpus proceedings, though he never raised those claims before 2020.

Petitioner incorrectly asserted that the filing of his second state court habeas petition tolled the statute of limitations for filing a federal habeas corpus petition under section 2254.  However, as the court concluded in its order adopting the PF&R in the 2011 case, the one-year period in which petitioner could timely file a federal habeas corpus petition expired on August 3, 2010.  Petitioner's filing of a second state habeas corpus petition on December 29, 2010, did not toll the already-expired statute of limitations which had run in the 2011 case.

Although the court originally declined to adopt the PF&R in the 2020 case, citing the possible grounds for equitable tolling, the court concludes that petitioner has not shown that circumstances existed to warrant equitable tolling of his petition.

Accordingly, inasmuch as petitioner has not demonstrated a basis for equitable tolling, petitioner's attempt to pursue untimely relief under Rule 60(b) is inappropriate.

## IV. CONCLUSION

Plaintiff has not satisfied the various elements that subject the one-year statute of limitations provided for in section 2254(d)(1) to equitable tolling inasmuch as his motion under Rule 60(b)(6) of the Federal Rules of Civil Procedure is so clearly untimely, and in view of his competency and lucidity in the filing of countless cases, an evidentiary hearing is unnecessary.

Accordingly, Petitioner's Motion for Relief from a Judgement or Order, (ECF No. 55), is denied. Petitioner's objections to the PF&R are overruled.

Accordingly, it is ORDERED that the PF&R be, and it hereby is, adopted by the court and incorporated herein, inasmuch as it comports with the analysis contained herein. It is, therefore, ORDERED that:

1. Petitioner's Motion for Relief from a Judgment or Order, ECF No. 55, is DENIED.

2. This civil action be, and hereby is, DISMISSED from the
   docket of this court.

     The Clerk is directed to transmit copies of this order
to all counsel of record and any unrepresented parties.

     ENTER: October 14, 2025


_____
John T. Copenhaver, Jr.
Senior United States District Judge

45